Judge Lane
stated the case, and delivered the opinion of the court:
The Ohio University was incorporated in 1834. 2 Ohio L. 193. The governor of the state, the president of the institution, and tw'elve trustees compose the corporation, who are authorized to suspend any member of their body, who, from misconduct, may become unworthy, or from age or other infirmities may be *373 rendered incapable of performing his duties. If any such removal shall occur in the recess of the legislature, they are authorized to fill the vacancy, by an appointment, to endure until the end of the next session of the legislature. When a vacancy occurs, by death, resignation, or otherwise, it shall be supplied by the legislature at its next session.
In 1805, Linley was appointed a trustee by resolution. 3 Ohio Stat. 459. He then resided in Athens, and he regularly performed his duties at the board until 1828. He removed to the neighborhood of Cincinnati during that year, having the care of the church at Walnut Hills. In 1829, he removed to the flats of. Grave creek in Virginia, one hundred and twenty miles east of Athens. He afterward removed to Washington county in Pennsylvania, and resided there, on January 11, 1832. Between the time of his removal from Athens in 1828, and January 11, 1832, he appears to have been present at but one meeting of the board, which was in 1830, when he transacted business with them without objection.
On January 11, 1832, by a resolution of the general assembly, 30 Ohio L. 326 the defendant was “appointed a trustee of the Ohio University, to fill the vacancy occasioned by Jacob Linley having removed out of the state.”
It is conceded that the legislature have no'power of appointment, except in the event of “a vacancy.” Unless, therefore, *tbc non-residence or non-attendance of Linley renders his office vacant, the appointment of Bryce is not good. • It is well settled that neither a neglect to exercise corporate powers, nor even an abuse of them, ipso facto, works a forfeiture of the franchise; that the corporation subsists until the forfeiture be ascertained and declared by a competent tribunal, in a judicial proceeding instituted for that purpose against it by government. 2 Burr. 869; 5 Mass. 230; 16 Mass. 94; 7 Pick. 344; 2 Term, 515; 9 Crunch, 51; 6 Cowen, 23; 5 Johns. 380; 16 Serg. & R, 140; 1 Blackf. 267. It is equally well settled that n*o member of a corporation shall be disfranchised, no officer removed, without the agency of a tribunal competent to investigate the cause and pronounce the sentence of the loss of right. The office is not vacant by neglect, or abuse; it requires an act done, or the exercise of power, to work the forfeiture and determine the title to the office, 2 Black. 156; 4 Kent’s Com. 127; for it is the forfeiture of a vested *374 right for the breach of a condition in law. Where the charter prescribes the terms under which the power of a motion is to be-exercised, they must be pursued; where the organic law is silent,, the corporation itself possesses the inherent power to ascertain and declare the forfeiture either of franchise or office. 2 Kent’s-Com. 297; 1 Burr. 517 ; 2 Binn. 441; 4 Binn. 448 ; 5 Binn. 486; Angell & Ames on Corp. 237.
This proceeding is essentially adversary in its character. The-justice of the common law permits no investigation of facts which may be followed by the loss of a right, or by the infliction of a penalty, to be conducted ex parte. It is essential to its validity that the party should be duly summoned. 4 Black. Com. 282; 1 East, 638; 6 Conn. 542; 2 Serg. & R. 141; 1 Burr. 540; Doug. 174.
In the present case, if the relator had forfeited his office by neglecting his duties, it was necessary that the corporation, after-reasonable notice to him and an opportunity for hearing, should investigate the facts, and determine his title to the office by sentence, and thus create the vacancy. Until this was done the relator was entitled to his seat, and the contingency had not happened in which the legislature could lawfully appoint a trustee.
As no statutory provision has prescribed a rule of proceeding in cases of quo warranto, the forms of proceeding are as-*at common law. As this application is made by the prosecuting attorney of the county, and the defense sets up a title to the office without objection to the authority for prosecuting, the court have adjudicated no other questions.
Writ awarded.