The following resolution adopted by the House of Representatives at the present session of the General Court on February 26 was received February 27, 1947:
"Resolved, That the Justices of the Supreme Court be respectfully requested to give their opinion upon the following questions:
"1. Does the state possess the power under the constitution to establish a tax upon bottled soft drinks as contemplated by House Bill No. 80? *Page 507 
"2. May the state collect the tax to be established by House Bill No. 80 and, after allowance for the expense of administration as therein specified, distribute one-half of the tax so collected to the towns in the same proportion which the total valuation of that town for property liable to taxation under chapter 73 of the Revised Laws bears to the total such valuation of all towns?
"Further Resolved, That the Speaker of the House transmit a copy of these resolutions and of House Bill No. 80 to the Chief Justice of the Supreme Court for consideration by the Court."
The following answer was returned:
To the House of Representatives:
The undersigned Justices of the Supreme Court make the following answers to the inquiries contained in your Resolution of February 26, 1947.
 1. "Does the State possess the power under the Constitution to establish a tax upon bottled soft drinks as contemplated by House Bill No. 80?"
The above bill proposing a tax upon sales of soft drinks is obviously modelled after the tobacco tax law (R. L., c. 79), and we are of the opinion that under the principles laid down in the case of Havens v. Attorney General, 91 N.H. 115, which sustained the constitutionality of the tobacco tax, House Bill No. 80 is constitutional. Authority to impose taxes of this nature is to be found in article 6 of the constitution as it was modified by the amendment of 1903. For statements of the far reaching effects of this amendment you are respectfully referred to Opinion of the Justices, 82 N.H. 561, and Opinion of the Justices, 84 N.H. 559, which established the constitutionality of a sales tax.
"Before the adoption of the amendment, the power to tax estates was all inclusive. Because of this fact, it was held that the grant of power to tax `other classes of property' gave authority to enter upon new fields of taxation. The original grant exhausted the subject of estate of a source of taxation. The new grant was of something else. The generative source of the tax was to be different. That difference is one of kind, and not of degree. A new element enters into the incidence of the tax." Opinion of the Justices, 82 N.H. 561, 568. The incidence of taxes established by virtue of this amendment "is to be determined by some fact other than mere ownership." Conner v. State, 82 N.H. 126, 128-129. *Page 508 
In Havens v. Attorney General, supra, 119, it was said: "It [the tobacco tax] includes a distinctive class of property. It applies to all similarly situated! The classification is supported by abundant reasons: tobacco for human consumption is not a necessity, and its fitness as a subject of taxation has been generally recognized. The incidence of the tax depends upon a characteristic event, a sale, which has been held to be a proper criterion for determining the incidence of a tax." The same may be said of the tax proposed in House Bill No. 80. It includes a distinctive class of property; namely, nonalcoholic beverages for human consumption. It applies to all similarly situated. All persons purchasing soft drinks must pay the tax and this includes practically the entire population of the state. The classification is supported by abundant reasons. Soft drinks, like tobacco, are not necessaries, but may be properly classified as luxuries which were recognized by the dissenting judges in Havens v. Attorney General, as proper subjects for taxation. Their fitness as subjects of taxation has been generally recognized. Similar taxes have been imposed in many of the states. The fact that this burden of the tax will be very widely distributed over almost the entire population of the state indicates that it is a good tax, according to accepted theories of taxation. The incidence of the tax depends upon a characteristic event, a sale, which has been held to a proper criterion for determining the incidence of a tax.
The principal objection to the tobacco tax as indicated in the dissenting opinions in the Havens case, was that it violated the principles of equality and proportionality. "It could not be successfully claimed that a law taxing luxuries and exempting necessaries would be invalid. . . . But it is not perceived how it can be found to be for the public welfare, in taxing the sale of tobacco products, to exempt the sale of such articles; for example, as smoking accessories, chewing gum, playing cards, certain forms of cosmetics, and certain forms of jewelry." Dissenting opinion of Allen, C.J., in Havens v. Attorney General, supra, 124. In other words, it was argued that if the tobacco tax be regarded as a luxury tax, it would not be valid unless all other luxuries were taxed except those having a peculiar claim to exemption. It is believed that this difference of opinion amongst the judges who sat in that case arose largely from a failure to realize that it had previously been held that the rule of equality and proportionality does not apply to the selection of the subjects of taxation, provided just reasons exist for the selection made. "The cases discussing the constitutional guaranties of equal rights and impositions of equal tax *Page 509 
burdens deal very largely with questions of double taxation, the meaning of the term estate, equality of valuation and uniformity of rate. They have little or no concern with the exercise of the selective power of the legislature. What is said in those cases as to equality and proportionality is to be read in the light of the subjects then under consideration. It does not necessarily apply to the extent of a selective power, any exercise of which must result in inequality of tax payment. Inequality of taxes laid is forbidden, but inequality caused by taxing some property and not taxing other is permitted. As to the relation of one part of a tax to another, the rule of proportion is a mathematical one. Two things are there required, an equal valuation and a uniform rate. Opinion of the Justices, 76 N.H. 609. But in the determination of what shall be taxed the rule is disregarded. This is necessarily so . . . . The reasons which may justify the use of the selective power as to the subjects for taxation may be as various as the motives which induce any rational action. The caution expressed a hundred years ago that taxes must be laid not only proportionally but also in due proportion (Opinion of the Court, 4 N.H. p. 569) has reference to something besides a problem in mathematics . . . . The meaning intended is that a just reason must exist for the selection of the subjects for taxation. When it can be seen that there are reasons for the action taken or proposed which may fairly be thought to be of that class, the court has no power to decide that the action cannot be taken . . . . `To establish the rules by which each individual's just and equal proportion of a tax shall be determined, is a task of much difficulty, and a very considerable latitude of discretion must be left to the legislature on the subject . . . and this discretion has always been exercised by the legislature. Within the limits of this discretion, as to the selection of proper subjects of taxation the authority of the legislature is without question supreme.' Opinion of the Court, 4 N.H. 565, 570." Opinion of the Justices, 82 N.H. 561, 574, 575.
It seems to us that there are reasons which may fairly be thought just and in the public interest for the selection of soft drinks as subjects of taxation in the same manner that tobacco is taxed, in contradistinction to other luxuries, differently used, less frequently and less generally sold, and upon which a tax might not be expediently levied. If the Legislature sees fit to impose the tax, its authority to do so is without question supreme.
The practice, which is believed to be fairly common, of making soft drinks such as root beer in the home for personal use of members of the family should perhaps be noted. Inasmuch as the proposed *Page 510 
bill deals only with commercial transactions, such beverages manufactured under the above circumstances should probably be exempted from taxation.
 2. "May the state collect the tax to be established by House Bill No. 80, and after allowance for the expense of administration as therein specified, distribute one-half of the tax so collected to the towns in the same proportion which the total valuation of that town for property liable to taxation under Chapter 73 of the Revised Laws bears to the total such valuation of all towns?"
A similar question received extended consideration in Opinion of the Justices, 84 N.H. 559, 579, 583. It was there said: "If the distribution takes the form of a true appropriation, made to equalize the public burden, it must be upon some reasonable and equitable basis." Ib. 582. We construe the provisions for distribution contained in s. 20 to be a "true appropriation" and we think that the basis proposed in the bill is reasonable and equitable and open to no constitutional objection.
 OLIVER W. BRANCH. FRANCIS W. JOHNSTON. FRANK R. KENISON. LAURENCE I. DUNCAN. AMOS N. BLANDIN, JR.
March 19, 1947.